FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF PITTSBURGH; Wichita Federal Savings & Loan Association; City of Farmington, New Mexico; and Federal Savings and Loan Insurance Corporation, Plaintiffs,

v.

OPPENHEIM, APPEL, DIXON & CO., a partnership, Defendant.

OPPENHEIM, APPEL, DIXON & CO., a partnership, Third-Party Plaintiff,

v.

MARINE MIDLAND BANK, N.A., a National Banking Association, Third-Party Defendant.

OPPENHEIM, APPEL, DIXON & CO., a partnership, Third-Party Plaintiff,

v.

E. Keith OWENS; Robert Bell; S. Muir Atherton; Daniel Harkens; Richard Tisdale; John J. Giovannone; and Memel, Jacobs, Pierno, Gersh & Ellsworth, a partnership, Supplemental Third-Party Defendants.

No. 85 Civ. 4163 (MEL).

United States District Court, S.D. New York.

March 19, 1986.

See also, D.C., 629 F.Supp. 427.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for plaintiffs; Harvey Kurzweil, Jonathan W. Miller, Neil Tublin, of counsel.

Sullivan & Cromwell, New York City, for third-party defendant; Philip L. Graham, Jr., James W. Dabney, Merle M. Martin, of counsel.

Patterson, Belknap, Webb & Tyler, New York City; Harold R. Tyler, Jr., Eugene L. Girden, Frederick T. Davis, of counsel.

Rosenfeld, Parnell & Shames, Inc., Los Angeles, Cal. (Edward M. Rosenfeld, of counsel), for defendant and third-party plaintiff.

LASKER, District Judge.

Marine Midland Bank, N.A. ("Marine") moves pursuant to Rules 12(b)(6) and 56(b) of the Federal Rules of Civil Procedure to dismiss the third-party complaint filed by Oppenheim, Appel, Dixon & Co. ("OAD") against Marine. The motion is granted.

In an earlier, related litigation, *Wichita Federal Savings and Loan Association v. Comark*, No. 82 Civ. 4703(MEL) (S.D.N.Y.), five savings and loan associations and a municipality sued Comark, a dealer in government securities, and Marine, Comark's clearing bank, for losses of $17 million in government securities. The *Wichita* action was tried to a jury in the spring of 1985, with the jury returning a verdict for fraud and the court directing a verdict for conversion against Comark. The plaintiffs settled their claims against Marine in mid-trial.

In the present action five of the six *Wichita* plaintiffs or their successors-in-interest (hereafter "plaintiffs") are suing OAD, Comark's accountants, on a variety of legal theories for the losses they sustained. OAD, in turn, has impleaded Marine as a third-party defendant[1] for recovery from Marine by way of contribution[2] in

---

1. Subsequent to the filing of the third-party complaint against Marine, OAD also impleaded a number of other third-party defendants. They are: E. Keith Owens; Robert Bell; S. Muir Atherton; Daniel Harkens; Richard Tisdale; John J. Giovannone; and the law firm of Memel, Jacobs, Pierno, Gersh & Ellsworth.

2. OAD's third-party complaint against Marine also asserts rights of "full indemnity" and "partial equitable indemnity" as bases for Marine's

the event that plaintiffs recover damages from OAD in this action.

By the present motion Marine seeks to dismiss the third-party complaint against it on the ground that as a released tortfeasor it is immune from contribution on the state law claims under N.Y.Gen.Oblig.L. § 15–108(b) (McKinney 1978) and on the federal securities law claims[3] because either (1) New York's contribution statute provides the appropriate rule of decision; (2) contribution is barred as a matter of federal common law; or (3) contribution on federal securities claims is available only as between joint tortfeasors, and Marine and OAD are not joint tortfeasors.

### I.

The settlement agreement between the plaintiffs and Marine provides for the dismissal with prejudice of plaintiffs' claims against Marine, the exchange of releases between the parties of all claims arising out of the Comark situation, the payment by Marine to plaintiffs of a "base settlement amount" of $3 million, and the payment of an "additional settlement amount" of up to $2 million which is contingent upon the amount of money subsequently recovered by plaintiffs from Comark, Comark's estate, Comark's partners, and OAD.[4] October 23, 1985 Settlement Agreement (Exhibit A to Affidavit of Philip L. Graham, Jr.).

New York's release statute, the focus of the parties' arguments on this motion, provides in pertinent part:

(a) Effect of release of or covenant not to sue tortfeasors. When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.

(b) Release of tortfeasor. A release given in good faith by the injured person to one tortfeasor as provided in subdivision (a) relieves him from liability to any other person for contribution as provided in article fourteen of the civil practice law and rules.

N.Y.Gen.Oblig.L. § 15–108 (McKinney 1978).

Before analyzing the legal issues raised by Marine's motion to dismiss, it is helpful to identify the positions of the parties. Marine maintains that the third-party complaint against it should be dismissed on the

potential liability to OAD. *See* Third-Party Complaint Against Marine Midland Bank, N.A. at ¶ 50. In its papers responding to Marine's motion to dismiss, however, OAD fails to contest Marine's position that the claims asserted against OAD cannot as a matter of law give rise to rights of indemnity or "partial equitable indemnity" against Marine, *see* Memorandum of Law In Support of Motion of Marine Midland Bank, N.A. To Dismiss Third Party Claims For Contribution and Indemnity at 12–13, 29–30. Accordingly, OAD is assumed to have abandoned those claims, and Marine's motion to dismiss is granted as to the indemnity and "partial equitable indemnity" claims.

**3.** In a previous decision in this case, OAD's motion to dismiss the main complaint was

granted as to the claim that it directly violated federal securities laws but was denied as to the claim that it aided and abetted Comark's federal securities law violations. *See First Federal Savings and Loan Ass'n v. Oppenheim, Appel, Dixon & Co.*, 629 F.Supp. 427 (S.D.N.Y.1986).

**4.** The settlement agreement provides in part that the $2 million contingent obligation is to be reduced by 25 cents for every dollar received by plaintiffs from OAD up to $2 million (in excess of the lesser of attorneys' fees expended or $500,000) and by 50 cents for every dollar received by plaintiffs from OAD between $2 million and $5 million. Thus, for example, should plaintiffs recover from OAD $5 million in excess of the deductible, Marine's contingent obligation would be reduced to zero.

ground that plaintiffs' release in Marine's favor bars all contribution claims against it. Marine takes no position on the question of what law governs the reduction of OAD's liability to the plaintiffs as the result of Marine's settlement or on the issue of the application of Section 15–108 to the settlement in this regard.

OAD concedes that the New York release statute bars contribution claims against Marine on the state law causes of action in the case (although OAD argues that Section 15–108 guarantees it a reduction in its potential liability of at least $5 million, based on the Marine settlement) but contends that contribution from Marine is not precluded on the federal securities law claims.

Plaintiffs, for their part, agree that contribution from Marine is barred on the state law claims but argue that the applicable rule of decision is provided not by New York's contribution statute but rather by the laws of other states—all of which do not entitle a joint tortfeasor such as OAD to a setoff based upon a settling tortfeasor's relative fault. *See* N.Y.Gen. Oblig.L. § 15–108(a). Plaintiffs appear to support OAD's position that contribution from Marine is not barred on the federal securities claims but admit that the law on the question is unclear.

## II.

■ Are OAD's contribution claims against Marine as to the state law claims [5] barred by Marine's settlement with the plaintiffs? Under the rule of *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed.2d 1477 (1941), the forum state's choice of law rules apply to determine which state's law governs the contribution question with respect

to the state law claims.[6] In deciding choice of law questions, the New York courts employ an "interest analysis" approach. *Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 95, 480 N.E.2d 679, 684 (1985). "[T]he law of the jurisdiction having the greatest interest in the litigation will be applied and ... the [only] facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." *Id.* (quoting *Miller v. Miller*, 22 N.Y.2d 12, 15–16, 290 N.Y.S.2d 734, 737, 237 N.E.2d 877, 879 (1968)) (changes in original).

■ Application of this New York choice of law analysis favors the selection of Gen. Oblig.L. § 15–108 as the rule of decision governing the issue of Marine's contribution on the state law claims. The major purposes of the New York statute are: (1) to rekindle the incentive for settlement between plaintiffs and defendants, while at the same time (2) ensuring that the nonsettling tortfeasor not be burdened with more than his equitable share of liability because of the fact that another tortfeasor has chosen to settle (*Mielcarek v. Knights*, 50 A.D.2d 122, 126, 375 N.Y.S.2d 922, 925 [4th Dept.1975]). (see, Report of the Law Revision Commission, Leg.Doc. [1972], No. 65[k]).

*Purcell v. Doherty*, 102 Misc.2d 1049, 1053, 424 N.Y.S.2d 991, 994 (Sup.Ct.Sp.T.Bronx Co.1980), *aff'd mem.*, 80 A.D.2d 755, 437 N.Y.S.2d 993 (1st Dept.1981), *aff'd*, 55 N.Y.2d 985, 449 N.Y.S.2d 186, 434 N.E.2d 255 (1982). At the outset it may be noted that it is not obvious that the New York statute is in true conflict with the laws of other jurisdictions which plaintiffs contend should apply to the issue of contribution

---

**5.** In a previous decision, plaintiffs' claim that OAD conspired with and aided and abetted Comark in its violations of the California Corporations Code and rules promulgated thereunder was dismissed. *See First Federal*, 629 F.Supp. at 433 n. 4.

**6.** The primary basis for this court's jurisdiction over the state claims in this case is the diversity of citizenship, 28 U.S.C. § 1332, between the

plaintiffs or their predecessors-in-interest and the OAD partnership. *See* Amended Complaint at ¶¶ 2–10, *First Federal Savings and Loan Association v. Oppenheim, Appel, Dixon & Co.*, No. 85 Civ. 4163 (MEL). Jurisdiction over the third-party action is based on Fed.R.Civ.P. 14(a) and the principles of ancillary jurisdiction. *See* Third-Party Complaint Against Marine Midland Bank, N.A. at ¶ 6.

from Marine. Plaintiffs suggest that the laws of Pennsylvania, New Mexico, Iowa, Missouri, and Kansas (domiciles of plaintiffs or their predecessors-in-interest) or California (locus of OAD's alleged tortious conduct) should provide the rule of decision; however, the only point on which the laws of these jurisdictions, as a group, differ from the New York statute is that they fail to provide a non-settling tortfeasor with a setoff against his or its liability based on the settling tortfeasor's share of fault. The laws of those jurisdictions do, however, appear to bar contribution from a settling tortfeasor and provide a non-settling tortfeasor with a setoff at least equal to the amount paid by the settling tortfeasor for the settlement. To this extent the law of the other jurisdictions is quite consistent with N.Y.Gen.Oblig.L. § 15–108. The only "conflict" is that New York has gone further in assuring an equitable apportionment of liability as between settling and non-settling tortfeasors.

■ However, even assuming a true conflict between Section 15–108 and the laws of other jurisdictions which might apply to the contribution claims in this case, an interest analysis favors application of the New York release statute. The question here is which jurisdiction "has the greatest concern with the specific issue raised in the litigation," *Babcock v. Jackson,* 12 N.Y.2d 473, 481, 240 N.Y.S.2d 743, 749, 191 N.E.2d 279, 283 (1963). The issue presented here is the effect of a release on claims for contribution asserted against a settling tortfeasor. It is significant, for the purposes of interest analysis, that the action between the plaintiffs and Marine was tried and settled in New York. Under these circumstances, New York has the greatest interest in effectuating the first purpose of Section 15–108, that of encouraging settlement of litigation conducted within the state. Moreover, that the settlement was negotiated between the parties and formalized on the record in New York [7] was not fortuitous. Plaintiffs brought suit in New York against a bank with its principal place of business in New York on claims alleging tortious conduct in New York.

An examination of all the interested parties—plaintiffs who elected to sue and settle in New York, a New York defendant bank, and a defendant accounting partnership organized under the laws of New York and with its principal place of business there—reveals the substantial interest New York has in applying its release statute to the allocation of liability among the plaintiffs, Marine, and OAD, all of whom have accepted the benefits and burdens of identifying with the jurisdiction and have submitted themselves to its authority. Furthermore, just as New York is the state with the greatest interest in providing an incentive for settlement of litigation within its borders, so it is the jurisdiction having the greatest concern with effectuating Section 15–108's second purpose, that of making sure non-settling tortfeasors do not bear a disproportionate share of liability.

Plaintiffs' contention that the laws of their domiciles or, alternatively, the law of California, should apply to the effect of Marine's release in this case overlooks two crucial considerations. First, the specific aspect of the litigation upon which the choice of law analysis must focus on this motion is not the underlying tortious conduct of the defendant/third-party plaintiff, OAD, in the present litigation but rather the actual trial and settlement of the *Wichita* action. Second, plaintiffs offer no explanation of the interests their domiciles or California might have in encouraging settlement or equitably apportioning post-settlement liability beyond the information that the plaintiffs relied on OAD's alleged misrepresentations in their domiciles and that OAD committed its alleged tortious acts in California. While such facts might be particularly relevant to an exclusively *lex loci delicti* approach to the choice of a law governing the underlying tort claim, New York has abandoned that choice of law rule, *see Schultz v. Boy Scouts of*

7. *See* Affidavit of Philip L. Graham, Jr., at Exhibit D.

*America, supra,* and it has little application to the law in conflict here.

Since New York appears to have the greatest interest in the specific issue presented on this motion, Section 15–108 is the applicable rule of decision as to OAD's right of contribution from Marine on the state law claims. Accordingly, Marine's motion to dismiss the third-party complaint is granted as to the state law claims.

### III.

May OAD nevertheless seek contribution from Marine on the federal securities claims? OAD admits that the law of contribution on federal securities claims is unsettled in this circuit, but contends that the "rule" is to permit claims for contribution from settling tortfeasors unless settling defendants contribute by way of settlement what in hindsight turns out to be a pro rata share of the damages ultimately awarded to plaintiffs, that is, a mechanical division of the total liability by the number of liable parties without regard to relative culpability for the losses incurred.[8] OAD maintains, therefore, that at this stage of the litigation Marine's settlement with plaintiffs cannot preclude contribution claims against it. Marine disputes OAD's contention that the governing Second Circuit rule is to permit claims for contribution against settling tortfeasors in federal securities cases and argues that as a matter of federal common law the court should either adopt the New York release statute as the rule of decision in this case or apply a federal standard that bars contribution against defendants who have reached settlements that are fair and equitable.

Contribution under the federal securities laws and the effect of a release of a federal securities law cause of action are both governed by federal law. *See Globus, Inc. v. Law Research Service, Inc.,* 318 F.Supp. 955, 958 n. 2 (S.D.N.Y.1970) (Frankel, J.), *aff'd on opinion below,* 442 F.2d 1346 (2d Cir.), *cert. denied sub nom.*

*Law Research Service, Inc. v. Blair & Co.,* 404 U.S. 941, 92 S.Ct. 286, 30 L.Ed.2d 254 (1971); *Locafrance U.S. Corp. v. Intermodal Systems Leasing,* 558 F.2d 1113, 1115 (2d Cir.1977). However, because the federal securities statutes do not prescribe any rule of contribution, a determination whether to incorporate state law as the federal rule of decision or to adopt a uniform federal rule is a matter of judicial policy requiring consideration of the state and federal interests affected as well as the need, if any, for a nationally uniform body of law. *United States v. Kimbell Foods,* 440 U.S. 715, 727–9, 99 S.Ct. 1448, 1457–59, 59 L.Ed.2d 711 (1979).

Federal courts in this circuit and elsewhere recognize an implied right to contribution among alleged joint securities law violators. *See Tucker v. Arthur Andersen & Co.,* 646 F.2d 721, 727 n. 7 (2d Cir.1981); *Smith v. Mulvaney,* [1984–85 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,084 at 91,422 (S.D.Cal. June 5, 1985) (collecting cases). In contrast, federal policy is unsettled on the issue of whether a non-settling defendant can exact contribution from a settling defendant. *Id.* at 91,422–424. The decisions in the Second Circuit do not adopt a single, consistent approach to the problem. In *Herzfeld v. Laventhol, Krekstein, Horwath & Horwath,* 540 F.2d 27 (2d Cir. 1976), the Court of Appeals held that a group of defendants whom the trial court had found to be *in pari delicto* with another defendant had, by settling with the plaintiff for more than half of its claimed losses, removed its tortfeasor status and could properly be relieved of contribution claims brought by the remaining defendant. *Id.* at 38–39. The court emphasized that the settling tortfeasors "neither escaped responsibility nor the deterrent effect of ... settlement" and noted that New York's release statute supported its holding. *Id.* at 39. The *Herzfeld* court evaluated the fairness of the settlement before concluding that contribution from the set-

---

8. *Smith v. Mulvaney,* [1984–85 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,084 at 91,422 n. 6 (S.D.Cal. June 5, 1985) (citing Adamski, *Contri-* bution and Settlement in Multiparty Actions Under Rule 10b–5, 66 Iowa L.Rev. 533, 555 (1981)).

tling defendant was barred. The court's standard of fairness was not, however, as OAD argues, necessarily a pro rata measure of plaintiff's damages but rather a finding of equal responsibility between the settling and non-settling defendants.[9]

In *Altman v. Liberty Equities Corp.*, 54 F.R.D. 620 (S.D.N.Y.1972), the district court refused to approve a partial class action settlement reached by some of the defendants with the class because it contained a provision barring subsequent claims for contribution by the non-settling defendants. Although the court recognized that its ruling "cut athwart the policy consideration in favor of settlements," and stated that "there may be circumstances in which a court in its discretion should enforce such a bar provision," it concluded that "to cut off the remaining nine defendants at this early stage of the litigation from their rights of contribution or indemnification would be unjust." *Id.* at 625.[10] Whatever perceived injustice may have motivated the court's decision, it was clearly not that the settlement departed from a pro rata measure of the class' total damages, since the court explicitly found in the first part of its opinion that the proposed partial settlement was fair, reasonable, and adequate since the three settling defendants (out of twelve defendants in the case) were "paying more than 25% of the known claims." *Id.* at 622.

Other courts in this circuit have looked to state law for a rule of decision to govern contribution on federal securities law claims. *See Quintel Corp. v. Citibank, N.A.*, Nos. 80–4936, 82–4856, slip op. at 3–5 (S.D.N.Y. Dec. 28, 1983) (available on LEXIS); *Stratton Group, Ltd. v. Sprayregen*, 466 F.Supp. 1180, 1189 n. 11 (S.D.N.Y.1979) (dicta). In *Quintel* the court refused on the eve of trial to "impose a different rule respecting contribution as between the state and federal claims" in order to avoid "plac[ing] upon the jury a mystifying task that would be unworkable and inexplicable." *Quintel*, slip op. at 5. In *Stratton* the court considered the state and federal interests at stake in deciding that Gen. Oblig.L. § 15–108 should be the rule of decision. Judge Duffy stated:

> On balance, I feel the better approach for a federal court would be to look to state law concerning contribution and its underlying principles. If these principles sufficiently vindicate the federal policy concerning contribution, they should be adopted. Indeed, absent a federal statute the parameters of contribution in relation to settling tortfeasors should not be defined in a vacuum.

Turning to the case at bar, the settled federal policy in permitting contribution in security fraud cases is to insure the deterrent effect of the securities laws. *Herzfeld v. Laventhol, Krekstein, Horwath & Horwath*, 378 F.Supp. 112, 135 (S.D.N.Y.1974), modified on other grounds in 540 F.2d 271 (2 Cir.1976). The policy underlying New York's contribution statute is to promote out of court

---

**9.** At least one court has read *Herzfeld* in the manner urged by OAD. *See Smith v. Mulvaney, supra*, at 91,422 (*Herzfeld* cited as "intimat[ing] ... that unless settling defendants contribute what in hindsight turns out to be a pro rata share of a judgment ultimately obtained, the settlement will not bar a subsequent action in contribution"); *see also Bottaro v. Hatton Assocs.*, 96 F.R.D. 158, 160 (E.D.N.Y.1982) ("determination [of settling defendant's liability for contribution] cannot be made until a final judgment has been rendered .... and the pro rata share owed by the settling party ascertained").

**10.** *Altman* was decided two years before the adoption of the current version of Section 15–108 and four days before the decision of the New York Court of Appeals in *Dole v. Dow*

*Chemical Co.*, 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972), which gave defendants a right to implead joint tortfeasors for apportionment of damages and contribution. Consequently, had the *Altman* court adopted what it interpreted as the state law regarding releases and contribution in effect at the time, there would have been no right to contribution against the settling defendants and at the same time no protection against the non-settling defendants' bearing more than their equitable share of damages. *See Altman*, 54 F.R.D. at 624–25. The *Altman* court's refusal to adopt state law as a rule of decision was therefore necessarily premised on somewhat different considerations than those confronting this court.

settlement in multiple tort situations. *Rock v. Reed-Prentice Machinery Co.*, 39 N.Y.2d 34, 382 N.Y.S.2d 720, 346 N.E.2d 520 (1976).

I find these policies to be fully compatible. As long as the settlement, and concomitant release, are reasonable and not sham, the deterrent effect of the securities laws is sufficiently served. In addition, the settlement promotes New York policy at the same time.

*Stratton*, 466 F.Supp. at 1189 n. 11 (dicta).

■ In sum, the courts have employed both a discretionary "fairness of settlement" approach and a state law incorporation approach to the present question. We agree with Judge Duffy that the better approach is the adoption of Gen.Oblig.L. § 15–108 as the rule of decision governing contribution claims against a settling tortfeasor under the federal securities laws. First, the goal of the federal securities laws both to compensate persons who have been defrauded and to deter violations of those laws, *Tucker*, 646 F.2d at 727 n. 7, is compatible with the purpose of the New York release statute to encourage settlement in multi-defendant cases without disproportionately burdening nonsettling defendants, *see* Part II, *supra*. The deterrence-spreading effect of the judicially implied right to contribution on federal securities claims is also compatible with the New York scheme. Both federal and state interests will be simultaneously advanced by applying state law as the federal rule of decision. In contrast, adoption of an ad hoc "fairness" approach as the rule of decision governing contribution will inhibit New York's policy of promoting settlement by depriving settling tortfeasors of any assurance that they have "bought their peace." Such a result is particularly disruptive of the state policy in cases such as this in which state and federal claims are based on the same set of facts or occurrences, for even if Section 15–108 precludes

contribution on the state causes of action, application of a different contribution rule to the federal claims would as a practical matter leave a settling defendant open to contribution on the full amount of damages, just as if the state statute had not been applied at all.

A second reason for adopting the state law of contribution as the rule of decision in a federal securities case has to do with the desirability of fashioning a uniform rule of contribution to govern all claims in the case. OAD argues that it is essential to develop a uniform national rule rather than have the federal securities laws applied differently in each of the fifty states. However, OAD has presented no reason, and we can think of no compelling reason, why a uniform national rule would be necessary to effectuate the federal regulatory program.[11] On the other hand, the value of having a uniform rule of contribution govern all claims in a single case is substantial. Where a federal securities law and a state law claim are based on the same tortious conduct, as discussed above, it is not clear how disparate rules of contribution—barring contribution on the state and permitting it on the federal claims—would be applied to a jury's verdict awarding identical damages on both claims, unless the state bar on contribution is to be completely overridden. A different but related problem is created regarding the appropriate setoffs to be granted on the state law claim to the nonsettling defendants. *See Quintel*, slip op. at 3–5.

In sum, in the absence of a controlling precedent, considerations of policy support the incorporation of New York's release statute as the rule of decision governing the effect of Marine's release on OAD's claim for contribution on the alleged federal securities law violations.

■ It bears note, however, that even under the "fairness" approach taken by

---

**11.** Rejection of a nationally uniform rule, as Marine notes in its brief, is not without precedent in the federal common law governing implied private rights of action under the securities laws. On the comparable issue of statutes of limitations, federal courts incorporate analogous state rules, and thus limitations periods for federal securities law claims vary from state to state.

some courts in this circuit Marine's release could well be found to bar OAD's contribution claims against it. Unlike the situation in *Altman*, this litigation is not at an early stage. To the contrary, the settlement between Marine and plaintiffs was reached during the trial of the earlier *Wichita* action. There has been no suggestion that Marine's settlement was sham or collusive, and a release bargained for at arm's length following extensive discovery, full motion practice, and a week of trial before a jury can be expected to reflect the settling parties' developed awareness of the strength of their claims and defenses. Bearing in mind that the barometer used by courts which have employed a "fairness" approach is not a pro rata measure of damages, we hold in the alternative that Marine's settlement was sufficiently fair to bar contribution against it on the federal claims.[12]

## IV.

This decision expresses no opinion about the specific application of the claims reduction provisions of Section 15–108(a) to the terms of the settlement agreement between plaintiffs and Marine. Although plaintiffs and OAD have argued vehemently for their respective interpretations of what setoffs OAD may be entitled to under Section 15–108(a) and although it is recognized that serious problems of interpretation may be created by the contingent nature of the settlement agreement,[13] we believe it inappropriate and unnecessary to address these concerns at this time. First, the settlement is now inchoate and thus any ruling made today would itself be contingent. Second, potential problems in applying Section 15–108(a) to the settlement agreement may be mooted by events such

as a lump sum settlement between plaintiffs and OAD or a jury verdict at trial that awards damages and apportions fault in such a way as to bring into play the "equitable share" mechanism of Section 15–108(a).

Accordingly, Marine's motion to dismiss is granted.

It is so ordered.

**12.** Since we hold that OAD's claims for contribution against Marine on the securities law claims are barred, we need not consider Marine's argument that OAD is not entitled to contribution under the federal securities laws because Marine and OAD are not joint tortfeasors.

**13.** Under certain circumstances—*i.e.*, certain combinations of fault apportionment and damage awards returned by a jury in this case—the calculation of OAD's setoff under the claim re-

duction provisions of Section 15–108(a) would require reference to the settlement amount paid by Marine to plaintiffs, which under the terms of the Marine settlement agreement is itself contingent in part upon the amount recovered by plaintiffs from OAD, which in turn requires a calculation of the proper setoff under Section 15–108(a). The circularity of this chain calculation would pose a problem.