### In re SUNRISE SECURITIES LITIGATION.

### MDL No. 655.

United States District Court,
E.D. Pennsylvania.

Oct. 28, 1988.

Berger & Montague, P.C., Philadelphia, Pa., Greenfield & Chimicles, Haverford, Pa., Squire, Sanders & Dempsey, Donald T. Bucklin, Washington, D.C., for plaintiffs.

Henry W. Sawyer, III, Philadelphia, Pa., for Philadelphia Newspapers, Inc.

Dilworth, Paxson, Kalish & Kauffman, Dechert Price & Rhoads, Philadelphia, Pa., for defendants.

### MEMORANDUM

O'NEILL, District Judge.

Plaintiffs Federal Savings and Loan Insurance Corporation ("FSLIC") and class shareholders have reached a proposed agreement settling their claims against defendants Blank, Rome, Comisky & McCauley ("Blank Rome"), Michael D. Foxman, M. Kalman Gitomer, Kenneth A. Treadwell and Edward G. Fitzgerald. The agreement encompasses a number of claims: state common law and Securities Exchange Act of 1934 claims alleged in *In re Sunrise Securities Litigation (MDL No. 655)* (the "Securities case"); fiduciary duty claims alleged in *FSLIC v. Jacoby, et al. (C.A. No. 86–7567)* (the "Fiduciary Duty case"); and any other possible claims between the settling parties related to Sunrise Savings and Loan Association. In accordance with F.R. C.P. Rule 23(e), the settling parties have filed a motion requesting preliminary approval of the proposed settlement and certification of a settlement class.

Section 4.4 of the settlement agreement requires that "FSLIC, the Class and Blank, Rome shall jointly move the Court and, as a condition of this Settlement, obtain a final Order dismissing and equitably barring any claims for indemnity and contribution that are or could be asserted, now or in the future, against the Firm and any Individual

Settling Defendant by any person arising out of the Fiduciary Duty and Securities Cases." Although no motion has yet been filed requesting entry of a bar order, after conferring with counsel for both settling and non-settling parties I decided that consideration of the bar order should precede the Rule 23(e) hearing. In my view, any fairness hearing or class notification concerning the proposed settlement would be premature prior to evaluation of the bar order upon which the settlement is conditioned. Given this decision, counsel agreed that I should first determine whether the proposed bar order is legally permissible on its face, and then proceed, if necessary, to analysis of the fairness of the bar order under the facts of this case.

Because the proposed settlement bars contribution[1] under a variety of claims rooted in both federal and state law, separate choice of law analysis is required for each type of claim. For the Securities case, any claims for "[c]ontribution under the federal securities laws and the effect of a release of a federal securities law cause of action are ... governed by federal law." *First Federal Savings & Loan v. Oppenheim, Appel, Dixon*, 631 F.Supp. 1029, 1034 (S.D.N.Y.1986); *see also Nelson v. Bennett*, 662 F.Supp. 1324, 1335 (E.D.Cal. 1987). Similarly, federal law applies to rights of contribution in the Fiduciary Duty case brought by the FSLIC, since under 12 U.S.C. § 1730(k)(1)(B) "any civil action, suit, or proceeding to which the [FSLIC] shall be a party shall be deemed to arise under the laws of the United States."[2] State law governs issues of contribution

pertaining to the pendent state law breach of duty claims in the Securities case. *First Federal*, 631 F.Supp. at 1032; *see also Rohm & Haas Co. v. Adco Chemical Co.*, 689 F.2d 424, 428–429 (3rd Cir.1982). I first will discuss the content of the federal law regarding bar orders, and then turn to the choice of state law.

## I. Federal Law

■ Since no federal statute provides a settlement bar rule, I must look to federal common law for the rule of decision. To give content to this law, I can adopt state law or "fashion a nationwide federal rule." *U.S. v. Kimbell Foods, Inc.*, 440 U.S. 715, 728, 99 S.Ct. 1448, 1458, 59 L.Ed.2d 711 (1979). This decision is "a matter of judicial policy dependent upon a variety of considerations always relevant to the nature of the specific governmental interests and to the effects upon them of applying state law." *Kimbell Foods*, 440 U.S. at 728, 99 S.Ct. at 1458, citing *U.S. v. Standard Oil Co.*, 332 U.S. 301, 310, 67 S.Ct. 1604, 1609, 91 L.Ed. 2067 (1947) (quotations omitted). The federal courts which have faced this choice in the context of a bar order in a federal securities case have come to opposite conclusions. *Compare Nelson*, 662 F.Supp. at 1336 (finding that a uniform federal rule is necessary) *with First Federal*, 631 F.Supp. at 1036 (adopting N.Y. state law).

I agree with all counsel who have addressed the Court on this issue that a uniform federal rule is desirable here. As the *Nelson* court points out, there are at least three compelling reasons why there should

1. Although § 4.4 of the settlement agreement is conditioned upon entry of a bar order as to claims for indemnity and contribution, in oral argument counsel for Blank Rome stated that the settling parties do not seek an order barring indemnity claims. I therefore will consider the proposed agreement to require an order barring claims of contribution only.

2. § 1730(k)(1) also provides that "any action, suit, or proceeding to which the Corporation is a party *in its capacity as conservator, receiver, or other legal custodian* of an insured State-chartered institution and which involves only the rights or obligations of investors, creditors, stockholders, and such institution *under State law* shall not be deemed to arise under the laws

of the United States." 12 U.S.C.A. § 1730 (1980) (emphasis added). But this provision is not applicable here. FSLIC filed its complaint in its corporate capacity, not as Sunrise's receiver. Moreover, the complaint alleges violations of federal FSLIC regulations (12 C.F.R. § 563.17) as well as state contract and tort claims. *See FDIC v. Blue Rock Shopping Center, Inc.*, 766 F.2d 744, 747 (3rd Cir.1985) (ruling that under FDIC equivalent of § 1730(k)(1), suit brought by FDIC in its corporate capacity "arises under the laws of the United States"); *FSLIC v. Ticktin*, 832 F.2d 1438, 1444–1446 (7th Cir.1987), *cert. granted*, —— U.S. ——, 109 S.Ct. 52, 102 L.Ed.2d 30 (1988).

be a uniform national settlement bar rule: the rule adopted will affect "key substantive rights of the defendants under the federal securities laws;" adoption of existing state statutes would produce disparate results and could "thwart the overall federal regulatory scheme;" and adoption of state law would encourage forum shopping and spawn wasteful litigation over the applicable state law. *Nelson*, 662 F.Supp. at 1336–1337. These considerations outweigh any interest in preserving a uniform rule of contribution for both federal and state claims in the same case.[3] *First Federal*, 631 F.Supp. at 1036.

The settling and non-settling parties present two different views as to the form the uniform federal settlement bar rule should take. Sections 4.2 and 4.3 of the settlement agreement provide that if either of the settling plaintiffs succeeds in a claim against a non-settling defendant, "the damages recoverable from such person(s) shall be reduced by the total amount received by" the plaintiffs in the settlement. In other words, the settling parties seek to limit the damages which the non-settling defendants can avoid through claims of contribution against the settling defendants to the amount of the settlement, regardless of liability findings at trial. Therefore, the settling parties contend that the federal settlement bar rule should allow only the *"pro tanto"* deduction of the amount of settlement from the liability of non-settling defendants. In contrast, the non-settling parties argue that the federal settlement bar rule should be "proportional", allowing non-settling defendants to set off against damages the share of liability attributed at trial to the settling defendants.

Different policy considerations support each of the rules. The *pro tanto* rule promotes settlement by assuring plaintiffs that they will not be penalized if the settling defendants' liability for damages determined at trial exceeds the amount of settlement. At the same time, it prevents "double recovery by a plaintiff" if the settling defendants are assessed no share of liability at trial, because the non-settling defendants still are credited with the amount of settlement. *In re Nucorp Energy Securities Litigation*, 661 F.Supp. 1403, 1408 (S.D.Cal.1987). To ensure that a settlement under the *pro tanto* rule approximates likely results at trial, a fairness hearing is held before the court approves the settlement. *See Nelson*, 662 F.Supp. at 1335 (stating that to prevent "unfair or sham settlements ... judicial approval of the adequacy of a settlement is necessitated prior to the imposition of a settlement bar"); *Nucorp*, 661 F.Supp. at 1408–1409 (discussing factors to be evaluated in determining if the settlement represents the settling defendant's "fair" or "proper" share of damages sought).

A proportional rule, on the other hand, places the risk of a bad settlement directly on the plaintiff, who thus has financial incentive to make sure that each defendant pays his respective share of damages. Moreover, application of this rule "immuniz[es] the settling defendant from liability for contribution but does not require a hearing on the fairness of the settlement to other tortfeasors." *Donovan v. Robbins*, 752 F.2d 1170, 1181 (7th Cir.1985).

Although courts in this Circuit previously have faced a choice between settlement bar rules, no uniform federal rule applicable in the circumstances of this case has been formulated.[4] Therefore, the policy

---

3. This interest receives consideration in the discussion concerning which state's law applies. *See infra*, Section II.

   The *First Federal* court also reasoned that application of a uniform federal rule would be disruptive of the state's policy of encouraging settlement. 631 F.Supp. at 1036. I agree with the *Nelson* court, however, that any such disruption would be minimal; the policy of encouraging settlement receives consideration in formulation of the uniform federal rule. *See Nelson*, 662 F.Supp. at 1337.

4. The Third Circuit has addressed the issue of settlement bar rules twice, in *Gomes v. Brodhurst*, 394 F.2d 465 (3rd Cir.1967) and *Miller v. Apartments and Homes of New Jersey, Inc.*, 646 F.2d 101 (3rd Cir.1981). In *Gomes*, the Third Circuit ruled that a settlement bar operated to allow recovery from "non-settling tortfeasors to the extent of their negligence, and no further." 394 F.2d at 468. This ruling was not made as a matter of federal law, however, but as law of the Virgin Islands. 394 F.2d at 466–467. Never-

considerations and interests supporting each rule must be weighed to determine which rule should be adopted. Upon consideration of the arguments advanced by both settling and non-settling parties, I have concluded that the proportional rule is the preferable one.

In essence, the choice between *pro tanto* and proportional rules is a choice as to which party should bear the risk of a bad settlement, settling plaintiff or non-settling defendant. *Nelson,* 662 F.Supp. at 1339 n. 24. The *pro tanto* rule promotes settlement by placing this risk on the non-settling defendant. But it also provides incentive for attempts by "guiltier defendants to get off cheaply by settling first." *Donovan,* 752 F.2d at 1181; *see also Gomes,* 394 F.2d at 468 (noting the possibility of a "collusive arrangement between a plaintiff and a favored joint tortfeasor.") Because their ultimate monetary recovery would be unaffected, plaintiffs have no incentive to ensure that a settlement approximates the defendant's share of liability. Indeed, it is arguable that the only settlements the *pro*

*tanto* rule would promote would be bad settlements, i.e. those in which settling defendants pay less than their share of liability.[5]

To remedy this problem, courts employing the *pro tanto* method hold fairness hearings before approving settlements. But as Judge Posner has pointed out, the fairness hearing requirement:

> means bogging down the settlement process in a miniature trial before trial, for in determining good faith the court could consider the risk of victory or defeat, the risk of a high or low verdict, the unknown strengths or weaknesses of the opponent's case, the inexact appraisal as to the elements of danger, the defendant's solvency and the amount of insurance coverage. 752 F.2d at 1181 (quotations omitted)

In addition to the loss of efficiency inherent in such a system, the circumstances of this case suggest that a fairness hearing may be inadequate to assure that the settlement figure was a fair approximation of fault.[6]

---

theless, I do find the *Gomes* Court's weighing of the equities persuasive, particularly considering that, as in the present case, the Court formulated its bar rule on a "clean slate".

*Miller* involved contribution of damages stemming from racial discrimination in housing. One of two groups of defendants settled before trial, and the other group sought a *pro rata* reduction of its trial determined share of liability. This *pro rata* rule apparently would assess an equal share of damages to each defendant, regardless of liability. *See Miller,* 646 F.2d at 109. (No party requests such a rule be adopted by this Court, perhaps due to the inherent unfairness of assuming equal fault among all named defendants.) Instead of adopting the *pro rata* rule, the Court fashioned a *pro tanto* rule with explicitly limited scope: "[w]e therefore hold that *in federal civil rights cases,* where one or more defendants have settled with a plaintiff, the damages recoverable by that plaintiff shall be reduced by the amount of the settlement received." 646 F.2d at 110 (emphasis added).

In a recent decision, *Lyncott Corp., et al. v. Chemical Waste Management, Inc., et al.,* 690 F.Supp. 1409 (E.D.Pa.1988), this Court adopted a proportional settlement bar rule for liability under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). But the Court's opinion relies on the fact that the Uniform Comparative Fault Act, source of the proportional rule in *Lyncott,* expressly provides for "application of comparative fault in

actions based upon strict liability." 690 F.Supp. at 1418. Since strict liability is not applicable in the present case, however, *Lyncott* does not compel a proportional rule here.

5. Under either rule the settling defendants have a financial incentive to avoid settling for more money than their estimate of what damages would be assessed against them at trial. But the proportional rule discourages plaintiffs from settling at an amount below their projection of a defendant's liability, because they will lose the difference between the settlement amount and the assessed liability. In contrast, under the *pro tanto* rule, plaintiffs need not exercise as much care with respect to the relation between the settlement amount and the defendant's liability. As a result, perhaps the only settlements which the *pro tanto* rule would produce that the proportional rule would not are ones in which a defendant settles for less than his likely share of liability at trial.

6. I recognize that under F.R.C.P. Rule 23(e), I must have a hearing to approve any settlement class plaintiffs reach in this action. But in formulating a uniform bar rule, I must consider the policy considerations relevant regardless of the plaintiffs' identity. I express no opinion at this time as to whether a *pro tanto* "fairness" hearing would be identical to or could be held in conjunction with, the class settlement hearing.

The parties have conducted only limited discovery thus far.[7] Moreover, due to the pending criminal action in the Southern District of Florida (*United States v. Robert C. Jacoby, et al.,* No. 87–6034 CR–HOE-VELER), the prospects of completing a significant portion of discovery in the near future are slim.[8]

Adoption of a proportional rule provides a "neat solution" to these problems because it eliminates the need for a fairness hearing. *Donovan,* 752 F.2d at 1181. Plaintiffs, who in this case are in a better position than the non-settling defendants to judge the fairness of the settlement,[9] are placed in a position where their financial interests demand that they settle for an amount approximating share of liability. If plaintiffs want to fund the litigation through settlement with some of the defendants, they should bear the risk of any inadequacy in the settlement.

The settling parties argue that the proportional rule should be rejected because it invites the non-settling defendants to try to shift blame at trial to the "empty chair" left by the settling defendants. Settling Parties' Memorandum at 12. As a result, they contend, the settling defendants will have to appear at trial to prevent shifting of liability to them. But under either rule, the non-settling defendants have every incentive to minimize their liability by arguing at trial that the settling defendants were at fault. Application of a proportional rule has no effect on the settling defendants, because the settlement bar order will still operate to prevent contribution for any additional share of liability attributed at trial. The only parties who will be penalized by the proportional rule are the settling plaintiffs FSLIC and class shareholders, who will lose money damages to the extent that their settlement was inadequate.

Settling parties also argue that the Third Circuit's reasoning in *Miller* should apply here, even though adoption of the *pro tanto* rule in that case was specifically limited to federal civil rights cases. 646 F.2d at 110. They claim that because FSLIC is a public entity, there is reason to believe that the settlement it has reached is in the public interest, and therefore even more reason than there was in *Miller* for believing that the settlement "will not deviate unacceptably from the aimed for proportionality of payment." 646 F.2d at 109. But the *Miller* court faced the settlement bar rule question after a trial which assessed liability against the non-settling defendants and exonerated the settling defendants from any liability. 646 F.2d at 110. In the present case, settling defendants' ultimate liability is uncertain, because the parties are far from being prepared for trial. Under these circumstances there is little to support the *Miller* court's assumptions that "parties generally will have sufficient incentive to negotiate settlements as vigorously as they can," and that "in most cases ... attorneys will be able to discover collusive settlements." 646 F.2d at 109–110.

7. Presently pending before this Court are several motions to compel discovery of large numbers of documents which have been withheld by parties, including the settling defendants, as privileged.

8. I am troubled by FSLIC's assertion in oral argument that it is inherent in the nature of settlement that the settlement amount will be for less money than the expected recovery at trial. Although FSLIC later stated that no implication that the settling defendants were paying less than their fair share was intended, I am left with the impression that FSLIC believes that its settlement is not necessarily equivalent to the likely trial-determined share of liability. The question of how much the settlement figure can diverge from the likely result at trial while remaining "fair" is left for the fairness hearing.

Here, where it is unclear how much of the evidence that would be presented at trial is currently available for evaluation by non-settling parties and this Court, the question arises whether a meaningful fairness hearing can be held at the present time. *Compare First Federal,* 631 F.Supp. at 1037 (stating that "a release bargained for at arm's length following extensive discovery, full motion practice, and a week of trial before a jury can be expected to reflect the settling parties' developed awareness of the strength of their claims and defenses.")

9. By virtue of its position in relation to Sunrise, the FSLIC has had access to much information unavailable to the non-settling defendants. As a result, the FSLIC currently is better able to assess the fairness of the settlement than the non-settling parties.

Moreover, FSLIC's status as a public entity does not entitle it to a presumption of fairness. Indeed, because it is a public entity, FSLIC is better suited than the private party plaintiffs in *Miller* to bear the risk of a bad settlement.

At oral argument, the settling parties also contended that a *pro tanto* rule should be adopted here because FSLIC will not settle otherwise. It remains to be seen, however, whether FSLIC will refuse to settle with the knowledge that a proportional settlement bar rule would apply. In addition, the mere fact that FSLIC wants a *pro tanto* rule does not require its adoption; while the federal policy of encouraging settlement is important, it does not completely overwhelm the considerations of fairness and deterrence which support a proportional rule. *See Gomes*, 394 F.2d at 468–469 (in formulating Virgin Islands settlement bar rule, ruling that although *pro tanto* rule might be more conducive to settlement, "[o]n balance the equities inherent in a [proportional] system convince us of its ultimate merit.")

■ In short, I adopt a proportional rule as the uniform federal settlement bar rule to be applied to the federal claims in this case. Because the agreement proposed by the settling parties is premised on application of a *pro tanto* rule, I cannot approve the agreement unless amended to reflect the application of a proportional rule to the federal claims. Although the settling parties' current motion must be denied, in order to give the settling parties guidance in reforming their agreement (should they choose to do so), I will now discuss the choice of a settlement bar rule applicable to the pendent state law claims.

## II. State Law

■ Two groups of state claims have been consolidated for joint pretrial proceedings in the present action: one group consists of suits originally filed in the Eastern District of Pennsylvania;[10] the other group is composed of the suits filed in the Southern District of Florida and transferred to this Court under 28 U.S.C. § 1407.[11] For state claims in those suits originally filed in this Court, the conflicts of laws rules of Pennsylvania must be applied. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In the Florida suits transferred here under § 1407, Florida's conflicts of laws rules govern. *In re "Agent Orange" Product Liability Litigation*, 580 F.Supp. 690, 695 (E.D.N.Y.1984); *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*, 309 F.Supp. 1053, 1055 (E.D.Pa. 1969).

For tort claims, both Pennsylvania and Florida have abandoned the traditional *lex loci delicti* conflicts rule in favor of the interest analysis approach of Restatement (Second) of Conflicts of Laws § 145.[12]

---

**10.** This group includes: *A.M. Kleiman, etc. v. Sunrise Savings & Loan, et al.*, C.A. No. 85–2720; *James Alan Goldstein, etc. v. Sunrise Savings & Loan, et al.*, C.A. No. 85–2763; *Lawrence D. Biele, etc. v. Sunrise Savings & Loan, et al.*, C.A. No. 85–3395; *Stanley Clearfield, etc. v. Sunrise Savings & Loan, et al.*, C.A. No. 85–3510; *A.A. Yovanov, etc. v. Sunrise Savings & Loan, et al.*, C.A. No. 85–3533; *David P. and Miriam Trachtenberg, etc. v. Sunrise Savings and Loan, et al.*, C.A. No. 85–4737; *W. Bradney Nield v. Sunrise Savings and Loan, et al.*, C.A. No. 85–4753; *Nathan and Nancy Cohen v. Sunrise Savings and Loan, et al.*, C.A. No. 85–5860; *The Broad Street Foundation, Inc. v. Sunrise Savings and Loan, et al.*, C.A. No. 85–6053; *Isaac B. Stein v. Sunrise Savings and Loan, et al.*, C.A. No. 85–6222; *Stanley Gordon v. Sunrise Savings and Loan, et al.*, C.A. No. 85–6999; and *George and Anne Popkin v. Jacoby, et al.*, C.A. No. 88–1713.

**11.** This group includes: *Sollie Kaplan v. Sunrise Savings & Loan, et al.*, C.A. No. 85–6411 (E.D.Pa. 86–0056); *Daniel Bimberg v. Sunrise Savings & Loan, et al.*, C.A. No. 85–2003 (E.D.Pa. 86–0652); *M. Norton v. Sunrise Savings & Loan, et al.*, C.A. No. 85–3745 (E.D.Pa. 86–2615).

**12.** Under *Restatement (Second) of Conflicts of Laws* §§ 170 and 173, § 145 applies to conflicts of law concerning the effect of a release or covenant not to sue and questions of contribution and indemnity among tortfeasors. *See, e.g., Pennington v. Dye*, 456 So.2d 507, 510–511 (Fla.App. 2 Dist.1984) (applying § 173 and § 145).

§ 145 provides:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relation-

*Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964); *Bishop v. Florida Specialty Paint Co.*, 389 So.2d 999 (Fla. 1980). Under this approach, "the court must weigh the relative interests of each concerned state in the outcome of the particular issue to be decided." *Shenandoah v. City of Philadelphia*, 438 F.Supp. 981, 988 (E.D.Pa.1976); *see Stallworth v. Hospitality Rentals, Inc.*, 515 So.2d 413, 415 (Fla.App. 1 Dist.1987) ("contacts must be evaluated with respect to the particular *issue* under consideration") (emphasis in original).

The issue under consideration here is the effect of the settlement agreement on the non-settling defendants' rights to reduce their liability under state law by claims for contribution.[13] As all counsel agree, a genuine conflict of laws exists: Pennsylvania law permits proportional reduction of the non-settling defendants' liability;[14] while Florida law allows *pro tanto* reduction if the settlement is in "good faith."[15]

Analysis of the states' respective contacts under § 145(2) shows that Florida's interest in resolution of the settlement bar issue is paramount. The conduct that allegedly caused the injury that is the subject of the settlement agreement occurred in Florida. This conduct includes: issuance of fraudulent statements which influenced the market price of Sunrise stock; approval of unsound loans; disbursement of funds for these unsound loans; meetings of the Sunrise Board of Directors at which loans were approved; and performance of legal work and issuance of legal opinions by Blank Rome from its Florida office. Although most of the class' plaintiffs and some defendants are Pennsylvania residents, several class plaintiffs and most of the defendants are residents of Florida.[16] Finally, there can be no doubt that the relationship between the parties to this lawsuit centers on Sunrise Savings and Loan, which was chartered and incorporated in Florida, and conducted its business there.

Non-settling defendants argue that I should adopt the reasoning of *First Federal*, in which the Eastern District of New York applied *Restatement* § 145 to the same issue under New York law.[17] The

---

ship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue. *Restatement (Second) of Conflict of Laws* (1969).

**13.** Under § 145, this choice-of-law analysis does not determine the law that will apply to Bernard Simonson's cross-claims for malpractice against Blank Rome, nor to any issue in this action other than the settlement bar issue.

**14.** Under 42 Pa.C.S.A. § 8327, a settlement with one joint tortfeasor does not bar claims for contribution unless it "provides for a reduction to the extent of the pro rata share of the released tortfeasor of the injured person's damages recoverable against all the other tortfeasors." The Pennsylvania Supreme Court has interpreted this section to mandate reduction by the settling defendants' "proportionate share of damages." *Charles v. Giant Eagle Markets*, 522 A.2d 1, 5, 513 Pa. 474 (1987).

**15.** Fla.Stat.Ann. § 768.041 provides for *pro tanto* reduction of non-settling tortfeasors' liability. *See Process Masters, Inc. v. Alpha III Ltd. Partnership*, 477 So.2d 69 (Fla.Dist.Ct.App.1985). *Pro tanto* reduction also is required by Fla.Stat. Ann. § 768.31(5) for claims not based on breaches of trust or of other fiduciary obligations. Fla.Stat.Ann. § 768.31(2)(g).

**16.** Settling Parties' Memorandum, 15; Memorandum of Outside Directors and Deloitte, Haskins & Sells, 44.

**17.** It is arguable that *First Federal* is irrelevant to the analysis here, since § 145 is not cited in the case. The Court does state, however, that it is applying the "interest analysis" approach of *Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985). *First Federal*, 631 F.Supp. at 1032. The *Schultz* Court refers to § 145 in outlining this approach, particularly in delineating the rule that "the relative interests of the domicile and locus jurisdictions in having their laws apply will depend on the particular tort issue in conflict in the case." 491 N.Y.S.2d at 95–98, 480 N.E.2d at 684–686.

It should be noted that the *Nucorp* Court performed a similar "governmental interest" analy-

*First Federal* court stated that "the specific aspect of the litigation upon which the choice of law analysis must focus on this motion is not the underlying tortious conduct ... but rather the actual trial and settlement of the ... action." 631 F.Supp. at 1033. Accordingly, the Court ruled that the New York applied because: the original action "was tried and settled in New York;" "the settlement was negotiated between the parties and formalized on the record in New York;" and two defendants were citizens of New York. 631 F.Supp. at 1033. Although the plaintiffs were domiciled in other states and the alleged tortious acts were committed in California, the Court stated that plaintiffs could offer "no explanation of the interests their domiciles or California might have in encouraging settlement or equitably apportioning post-settlement liability." 631 F.Supp. at 1033.

I agree with the *First Federal* Court that analysis under § 145 must focus on the states' respective interests in the cases' trial and settlement, not simply on the *locus delicti*. But unlike New York in *First Federal,* Pennsylvania is not the residence of most of the parties, nor was it the site for most of the settlement negotiations.[18] Under *First Federal,* Pennsylvania's only significant interest in the settlement bar issue is that this Court is the forum for the litigation.

Moreover, Pennsylvania's interest as forum is less substantial than that of New York in *First Federal.* While the *First Federal* action was tried and settled in New York, the present action was consolidated in this District only for "centralized

pretrial proceedings."[19] Docket No. 655 Transfer Order, Judicial Panel on Multidistrict Litigation, December 10, 1985. This Court will be the forum for all future pretrial proceedings and for trial of the actions filed in Pennsylvania, but the actions filed in Florida presumably will be tried there. Thus, Florida shares Pennsylvania's interest in the settlement bar issue as the eventual forum of litigation.

During oral argument, the non-settling parties argued that Pennsylvania has a greater interest than Florida in settlement of these actions because pretrial proceedings will consume much more of the Court's time and energy than will the trial itself. But it is neither prudent nor necessary to estimate how much time pretrial proceedings and the trial will consume to determine which state will be more affected by the choice of bar rule here. Florida's interests as site of the conduct alleged to have caused injury, residence of several parties, and locus of the parties' relationship, as well as its interest as forum for trial of the actions originally filed in Florida, clearly outweigh Pennsylvania's interests in those actions.

For the actions originally filed in Pennsylvania, the difference is not so extreme, but Florida's interests are still more substantial. Pennsylvania's interest in this issue is solely procedural, while Florida's interests go to the heart of the controversy that the proposed agreement would settle. In addition, *Restatement (Second) of Conflicts of Laws* § 6(2),[20] lists general factors to be considered in conflicts of laws decisions, including promotion of "certainty,

---

sis in determining that California law gave the settlement bar rule in that case. But the conflicts law applied in *Nucorp* was California law. When formulating its "governmental interest" analysis in *Reich v. Purcell,* 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967), the California Supreme Court did not explicitly adopt § 145, although there are obvious similarities between the California rule and § 145. Therefore the *Nucorp* analysis need not guide my interpretation of § 145.

**18.** Class plaintiffs represent that most of the negotiations took place in Washington, D.C. No party argues that District of Columbia law should apply.

**19.** In transferring the Florida actions to this Court under § 1407, the Judicial Panel on Multidistrict Litigation noted that either this District or the Southern District of Florida would be an appropriate forum, but stated: "We are aware, however, of the heavy criminal case backlog that currently exists in the Southern District of Florida, and we are reluctant at this time to increase the burden on the district's personnel and facilities by centralizing a complex multidistrict civil litigation there."

**20.** This section sets forth the general factors to be considered in choice of law decisions, and is applicable here through § 145.

predictability and uniformity of result." *See Stallworth*, 515 So.2d at 417–418, n. 4. Adoption of the Florida rule in the actions filed in Pennsylvania would produce a uniform rule for all of the state claims, regardless of where they were filed.[21] Under these circumstances, Florida's *pro tanto* rule should govern settlement of the state law claims filed in Pennsylvania.

In conclusion, federal law mandates proportional reduction of the non-settling defendants' liability under the federal claims, and Florida law requires a *pro tanto* rule for the state law claims. The proposed settlement agreement is conditioned upon *pro tanto* reduction of liability for all claims, and therefore cannot be approved. The settling parties' motion for preliminary approval of the proposed settlement and certification of a settlement class will be denied.[22]

21. Of course, the end result in this case is not uniform, since a proportional rule applies to the federal claims, and a *pro tanto* rule to the state claims. But policy considerations clearly favor a proportional federal rule, and Florida's many contacts require that the Florida settlement bar rule apply to the state actions. The combination of state and federal claims in the same action makes this lack of uniformity unavoidable.

22. Should the settling parties revise their agreement, it must state the amount of the settlement attributable to the state law claims. Since only the state law claims will be subject to the *pro tanto* rule, calculation of the non-settling parties' liability respecting those claims is impossible without such a separate figure. A fairness hearing also would be necessary to determine if this figure was a "fair" or "proper" approximation of the settling parties' liability for the state claims. Given the state of discovery in these actions, I express no opinion as to how soon such a hearing could be held.