**In re SUNRISE SECURITIES LITIGATION.**

**MDL No. 655.**

United States District Court, E.D. Pennsylvania.

May 29, 1990.

## MEMORANDUM

O'NEILL, District Judge.

Three groups of claims relating to Sunrise Savings and Loan Association of Florida ("Old Sunrise") have been consolidated for pretrial proceedings in this multidistrict litigation: state common law and Securities Exchange Act of 1934 claims asserted by Old Sunrise shareholders (the "Securities" case); claims of breaches of fiduciary duties asserted by the Federal Deposit Insurance Corporation ("FDIC") as manager of the FSLIC Resolution Fund[1] (the "Fiduciary Duty" case); and state common law and civil RICO claims asserted by former depositors in Old Sunrise and in Sunrise Savings and Loan Association, a Federal Savings and Loan Association ("New Sunrise") (the "Depositors" case).[2] Before the Court at present are motions for approval pursuant to Fed.R.Civ.P. Rule 23(e) of agreements the class plaintiffs in the Securities case have reached settling their claims against three groups of defendants: Old Sunrise, FDIC as receiver for Old Sunrise, New Sunrise, FDIC as receiver for New Sunrise, the Federal Home Loan Bank Board ("FHLBB"), and FDIC (the "FDIC" defendants); Blank, Rome, Comisky & McCauley, Michael D. Foxman, M. Kalman Gitomer, Kenneth Treadwell and Edward E. Fitzgerald, Jr. (the "Blank Rome" defendants); and Robert Calsin and Sheila Evelyn. Plaintiffs in the Depositor case and one purported Old Sunrise shareholder have filed the only objections to the proposed settlements. For the reasons discussed *infra*, I will deny their objections and approve the proposed settlements.

## I. BACKGROUND

Old Sunrise was a Florida corporation chartered as a capital stock savings and loan association on March 10, 1980. Until declared insolvent by the FHLBB on July 18, 1985, Old Sunrise operated offices in Florida and mortgage loan origination offices in Florida, Texas and Arizona. Calsin and Evelyn served as officers of Old Sunrise. Blank Rome acted as general counsel to Old Sunrise, and provided a wide variety of services to the thrift. Foxman, Gitomer, Fitzgerald and Treadwell all were partners of Blank Rome while the firm represented Old Sunrise. In addition, Foxman and Gitomer were co-founders of Old Sunrise and, at various times, served as directors of Old Sunrise and of Old Sunrise subsidiaries.

Following an FDIC investigation, Old Sunrise entered into a supervisory agreement on April 24, 1984 with the FDIC and the Division of Banking of the State of Florida. On April 25, 1985, Old Sunrise disclosed that its Chairman and President, Robert C. Jacoby, and its Executive Vice President, William C. Frame, had resigned, and that Old Sunrise expected to report a loss in the second quarter of fiscal year 1985. Old Sunrise entered into a second supervisory agreement with the FDIC and the Division of Banking of the State of Florida on April 30, 1985. On May 14, 1985, the first class action on behalf of Old Sunrise shareholders was filed in this district.

The FHLBB determined that Old Sunrise was insolvent and appointed the FDIC as receiver on July 18, 1985. That same day, the FDIC as receiver organized a new federal savings and loan association, New Sunrise, and transferred substantially all of the Old Sunrise assets and liabilities to New Sunrise. Through a series of agreements, the FDIC acquired Old Sunrise's causes of action against its officers, di-

---

**1.** FSLIC was dissolved by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L.No. 101–73, § 401, 103 Stat. 183, 354 (1989). By Order entered on February 1, 1990, FDIC was substituted for FSLIC in this litigation. Accordingly, throughout this Memorandum and Order I have used the term "FDIC" wherever the parties' pleadings or agreements referred to "FSLIC".

**2.** On November 9, 1989, I granted summary judgment in favor of the defendants and dismissed plaintiffs' complaint in the Depositors case. The depositors' appeal of my decision currently is pending before the Court of Appeals for the Third Circuit.

rectors, attorneys, accountants and appraisers.

By December of 1985, numerous shareholder class action suits had been filed both in this district and in the Southern District of Florida against Blank Rome, Foxman, Gitomer, Old Sunrise officers and directors and Deloitte & Touche,[3] Old Sunrise's independent auditor. At that time, the Judicial Panel on Multidistrict Litigation consolidated all of the Old Sunrise shareholder suits in this district for centralized pretrial proceedings. A consolidated class action complaint for all of the shareholder suits, the Restated Second Consolidated Amended Complaint, was filed on July 25, 1986 against, among other defendants, Blank Rome, Foxman, Gitomer, the FDIC defendants, Calsin and Evelyn.

The FDIC filed the Fiduciary Duty case against largely the same defendants named in the Securities case, including the Blank Rome defendants, on September 2, 1986. Although originally filed in the Southern District of Florida, the Fiduciary Duty case subsequently was consolidated with the Securities case in this district.

On September 12, 1986, the FHLBB declared New Sunrise insolvent and appointed the FDIC as receiver.

In a series of motions filed in late 1986 and early 1987, the FDIC sought rulings from this Court dismissing the shareholder plaintiffs' claims or recognizing the FDIC's priority over the shareholder plaintiffs to defendants' assets. On February 3, 1987, I denied the FDIC's motions but explicitly left open the priority question. After months of negotiations, co-lead counsel for the shareholder plaintiffs and counsel for FDIC reached an agreement resolving the priority question and coordinating prosecution of the Securities and Fiduciary Duty cases. Under their Settlement and Joint Prosecution Agreement and Confidential Sharing Agreement, entered on July 9, 1987, the FDIC and shareholder plaintiffs agreed to combine forces in the litigation, sharing expenses as well as any recoveries from the defendants; the FDIC agreed to stipulate to certification of a shareholder class, and the shareholder plaintiffs agreed to dismiss with prejudice their claims against the FDIC defendants. Also on July 9, 1987, I certified the class on behalf of all persons who purchased the securities of Old Sunrise between July 1, 1983 and July 18, 1985, except for (a) those who bought such securities to cover short sales, (b) the defendants named in the Restated Second Consolidated Amended Complaint, and (c) relatives, affiliates, legal representatives, heirs and other persons associated with the defendants during the class period.

The shareholder plaintiffs reached an agreement with Calsin on August 26, 1987, dismissing Calsin from the Securities case without prejudice, and providing that the plaintiffs could satisfy any recovery against him only from applicable insurance policies. On May 20, 1988, the shareholder plaintiffs entered a similar agreement with Evelyn.

The FDIC and shareholder plaintiffs entered a Release and Settlement Agreement settling their claims against the Blank Rome defendants on July 22, 1988. The parties to the settlement subsequently moved for preliminary approval of their settlement and certification of a settlement class. I denied the parties' motion on October 28, 1988, on the grounds that the Release and Settlement Agreement limited the non-settling defendants to *pro tanto* reduction of damages through claims of contribution against the settling defendants. I held that the settlement bar rule applicable to the plaintiffs' federal law claims required proportional reduction of damages recoverable from the non-settling defendants by the share of liability attributed to the settling defendants at trial. *In re Sunrise Securities Litigation*, 698 F.Supp. 1256, 1257–1260 (E.D.Pa.1988).

George and Anne Popkin filed an action in this Court on February 29, 1988 on behalf of Old and New Sunrise depositors who allegedly suffered losses upon the insolvencies of the thrifts. The Popkins as-

---

**3.** Old Sunrise's independent auditor, Deloitte, Haskins & Sells, has since merged with another accounting firm and is now named Deloitte & Touche.

serted their claims against essentially the same defendants named in the Fiduciary Duty case. On November 9, 1989, I granted motions for summary judgment filed by many of the defendants in the Depositors case, and dismissed the Popkins' complaint as to all defendants. *In re Sunrise Securities Litigation*, 108 B.R. 471 (E.D.Pa. 1989).

The FDIC, shareholder plaintiffs and Blank Rome defendants renewed negotiations following my ruling of October 28, 1988, and agreed upon a Modification to Release and Settlement Agreement on June 19, 1989, changing the original Agreement to conform with that ruling.[4] The parties to the various settlements moved for preliminary approval of the proposed settlements and for entry of an order with respect to class certification, notice and hearing. The depositor plaintiffs sought denial or stay of preliminary approval and notice pending resolution of their appeal of the Memorandum and Order of November 9, 1989 granting summary judgment against them. I rejected the depositor plaintiffs' contentions and granted the settling parties' motion on December 29, 1989. In response to one of the depositor plaintiffs' objections to their motion, the FDIC, share-

holder plaintiffs and Blank Rome entered a Second Modification to Release and Settlement Agreement on February 16, 1990; this modification amended the shareholder class's release so as not to discharge or compromise any claim for recovery of lost deposits at Old or New Sunrise.[5]

The settling parties mailed and published notice to the class [6] of the proposed settlements and hearing in compliance with the Order of December 29, 1989. I held a hearing on the proposed settlements on April 25, 1990.

## II. DISCUSSION

### A. *Analysis under Girsh*

Fed.R.Civ.P. Rule 23(e) provides: "A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." In *Girsh v. Jepson*, 521 F.2d 153 (3d Cir.1975), the Court of Appeals for the Third Circuit noted some of the factors relevant to a determination of the fairness of a settlement:

> (1) the complexity, expense and likely duration of the litigation ...; (2) the reac-

---

4. Presumably the settling parties could have appealed my ruling of October 28, 1988, but they chose not to do so. Among other changes, the Modification amends § 4.2 of the Release and Settlement Agreement to state:

> 4.2 If the Class secures a judgment in the Securities Case based upon joint and several liability against the Firm and any person(s) liable for some or all of the injuries complained of, or that could have been complained of, in the Securities Case, the damages recoverable from such person(s) shall be reduced by either (a) the total amount received by the Class, exclusive of interest, from Settling Defendants in this settlement (*pro tanto* reduction), or (b) the proportional share of such joint and several liability as may be attributed at trial to the Settling Defendants (proportional reduction), as may be required by the Court as a condition of approval of this Agreement. The Class and the Settling Defendants agree that in the event the Court orders any judgment entered in favor of the class under federal securities law claims to be reduced in accordance with subpart (b), *supra*, any judgment entered in favor of the Class under state law claims shall also be reduced in accordance with subpart (b), *supra*.

It is for the Court of Appeals to decide whether this provision preserves the settling parties' right to appeal my ruling of October 28, 1988 that proportional reduction is required. I therefore express no opinion as to the appealability of my ruling.

5. The release form mailed to class members as part of the notice of settlement specifically excluded claims of depositors for lost deposits or interest from the claims released under the proposed settlements. Hearing of April 25, 1990, Tr. at 20–21; Proof of Claim Form, at 1.

6. For the purposes of the settlements with the Blank Rome defendants and with Calsin and Evelyn only, the class is defined as: all persons who acquired the securities of Old Sunrise during the period between July 1, 1983 and July 18, 1985; except for (a) persons to the extent they bought such securities to cover short sales, (b) Blank Rome, its current and former partners, associates, employees and agents and the defendants in the Restated Second Consolidated Amended Complaint, and the spouses, children, legal representatives and heirs of Blank Rome and the defendants and (c) persons employed by defendants during the class period.

tion of the class to the settlement ...; (3) the stage of the proceedings and the amount of discovery completed ...; (4) the risks of establishing liability ...; (5) the risks of establishing damages ...; (6) the risks of maintaining the class action through the trial ...; (7) the ability of the defendants to withstand a greater settlement ...; (8) the range of reasonableness of the settlement fund in light of the best possible recovery ...; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.... 521 F.2d at 157 (citations omitted).

Upon consideration of the relevant factors, I find that each of the three proposed settlements is fair, reasonable and adequate.

Approval of the proposed settlements will alleviate in part the extraordinary complexity, expense and likely duration of this litigation. The number of parties involved in this litigation, and their myriad relationships to Old Sunrise, have produced a multitude of complex issues. Briefing and resolution of these issues, in turn, have caused the litigation to proceed slowly. The first Old Sunrise shareholder suit was filed in this Court five years ago, yet the parties still have not completed first phase document production, and just now are beginning to schedule substantive depositions.[7] If approved, the three proposed settlements will remove three groups of defendants from the litigation and thereby, in all likelihood, diminish the complexity, expense and duration of the litigation for the non-settling parties.

While the FDIC settlement will not remove FDIC as plaintiff in the Fiduciary Duty case, it nevertheless will be valuable in reducing the complexity, expense and duration of this litigation. By coordinating their prosecution of the Securities and Fiduciary Duty cases, the shareholder plaintiffs and FDIC have eliminated the possibility of further disputes regarding priority of claims between them. Moreover, as shareholder plaintiffs' counsel noted at the hearing of April 25, it is unlikely that any defendant in this litigation would settle with the shareholder plaintiffs alone, since that defendant would still have to litigate the same issues against the FDIC. Hearing of April 25, 1990, Tr. at 16. The Settlement and Joint Prosecution Agreement thus was instrumental in producing the Blank Rome settlement, and hopefully has made possible settlements with other defendants in the future.

The class has reacted favorably to the proposed settlements. In accordance with the Order of December 29, 1989, the settling parties mailed individual notices of the proposed settlements to some 21,600 potential class members, and published a summary notice in the Wall Street Journal, the Philadelphia Inquirer, the Fort Lauderdale Sun–Sentinel, and the Miami Herald on January 31, 1990. Only one purported class member has objected to any of the settlements.[8] As of the April 25 hearing, the settling parties had received no exclusion requests.[9]

As discussed above, although some five years have passed since the commencement of this litigation, the proceedings are still at a relatively early stage. Discovery is likely to extend far into the foreseeable future, since document production has not yet been completed, and substantive depositions are just now being scheduled. But through their Joint Prosecution Agreement

---

7. Thousands of documents have been withheld as privileged or irrelevant. I have referred to the Special Master those privilege and relevance issues which I decided could not be resolved without examination of the specific documents withheld. *See* Memorandum and Order of May 31, 1989. Substantive depositions are contemplated by Pretrial Order No. 7, which was entered on March 30, 1990.

8. Guy F. Damore mailed a letter to my chambers which was filed as an objection on April 9, 1990. *See infra.* George and Anne Popkin, plaintiffs in the Depositors case, also filed an objection to the proposed settlements, but they are not potential members of the shareholder settlement class.

9. One Old Sunrise shareholder filed an apparent exclusion request, but after consultation with the settlement administrator, withdrew his exclusion. Hearing of April 25, 1990, Tr. at 7; Plaintiffs' Exhibit 1.

with the FDIC,[10] the shareholder plaintiffs nevertheless have been able to review vast quantities of documents produced by the settling defendants, enabling them to assess knowledgeably the liability and defenses of the settling defendants.

With respect to each of the three groups of defendants, shareholder plaintiffs face a significant risk of being unable to establish liability should I not approve the proposed settlements. The class claims that the Blank Rome defendants, Calsin and Evelyn violated Section 10(b) of the Securities Exchange Act of 1934, Rule 10b–5, and committed common law fraud, deceit and intentional misrepresentation. As they admitted at the hearing of April 25, the class shareholders may well have difficulty establishing that the defendants knew and withheld material information which they had a duty to disclose. Hearing of April 25, 1990, Tr. at 23–24. While the class has asserted claims that the FDIC defendants were negligent in supervising Old Sunrise and failed to warn shareholders about Old Sunrise's true financial condition, to recover the shareholder plaintiffs would have to traverse the significant legal hurdle of establishing that the FDIC can be held liable by shareholders for acts during its supervision of a thrift. Finally, if the FDIC settlement were not approved, the class shareholders could not recover against any defendant before the FDIC was made whole unless they established that the FDIC is not entitled, as a matter of public policy, to absolute priority over any shareholder claims against officers, directors, outside counsel or accountants of an insolvent thrift.

Likewise, the shareholder plaintiffs would face a significant risk if required to establish damages at trial. The defendants would contend that disclosures during the class period informed shareholders that there were a number of problems at Old Sunrise, and that some or all of the decline in market price of Old Sunrise stock therefore could not be attributed to any misrepresentation or omission. *See* Hearing of April 25, 1990, Tr. at 33.

At least two of the three groups of defendants could withstand a greater settlement than those agreed to by the shareholder plaintiffs. The proposed Blank Rome settlement with the FDIC and shareholder plaintiffs will exhaust the $50 million insurance coverage available to Blank Rome, but does not use any other assets of the firm or its partners. The FDIC defendants have not agreed to pay any money to the class, but rather have agreed to share with the class proceeds from any recovery against the remaining defendants in this litigation. Presumably, the FDIC could withstand a settlement involving payment of FDIC funds. The class has agreed to limit any recovery against Calsin and Evelyn to the applicable insurance coverage, and not to pursue any personal assets of these defendants; counsel for Calsin and Evelyn has represented to this Court that Calsin and Evelyn's personal assets are limited, and that class counsel entered the stipulations of dismissal only after learning that their personal assets are limited.[11]

Despite the availability of additional funds for settlement from at least FDIC and the Blank Rome defendants, I nevertheless find that the proposed settlements are well within the range of reasonableness in light of the best possible recovery, and in light of all the attendant risks of litigation. Shareholder plaintiffs estimate that the maximum amount of damages they could recover in the Securities case for their out-of-pocket losses is approximately

---

**10.** By proceeding in conjunction with the FDIC, the shareholder plaintiffs have had access to documents and information not produced to non-settling defendants. Hearing of April 25, 1990, Tr. at 23. *See In re Sunrise Securities Litigation,* 698 F.Supp. at 1260, n. 9 ("By virtue of its position in relation to Sunrise, the [FDIC] has had access to much information unavailable to the non-settling defendants. As a result, the [FDIC] currently is better able to assess the fairness of the settlement than the non-settling parties.")

**11.** According to counsel for Calsin and Evelyn, before agreeing to the stipulation of dismissal, class counsel requested and reviewed a financial statement of Calsin. Because Evelyn is a homemaker with several small children and limited assets, class counsel did not ask to review her financial statement before stipulating to her dismissal.

$66,000,000. Plaintiffs' Memorandum in Support of Proposed Settlements, at 24; Hearing of April 25, 1990, Tr. at 18. Under the Blank Rome settlement, the class will receive approximately $13,125,000.[12] Considering the significant risks of establishing liability and damages discussed above, as well as the presence of other defendants in the Securities case who may be liable for some or all of the shareholder plaintiffs' losses, I find that the class's recovery of approximately 20% of their estimated maximum recoverable damages from the Blank Rome defendants is well within the range of reasonableness.[13]

While the shareholder plaintiffs' settlement with the FDIC defendants does not involve payment of funds by the FDIC, it does provide that the class and the FDIC jointly will prosecute, and share in any recovery from, the other defendants. Thus, in effect, the FDIC has settled the class's claims against the FDIC defendants in part with money to be recovered from the other defendants.[14] As noted *supra*, the class also derives other benefits from its settlement with the FDIC defendants, including: sharing of expenses for the remainder of this litigation; the FDIC's stipulation to certification of a shareholder class; and elimination of the risk that the FDIC might seek to stay or dismiss the class's claims against the non-FDIC defendants on the grounds that the FDIC is entitled to absolute priority over the class against those defendants. I find that the class's anticipated share of recoveries against the various defendants under the Sharing Agreement, along with the other benefits the class derives from its settlement with the FDIC defendants, constitute a settlement within the range of reasonableness in light of the substantial risks the class would face if required to try their claims against the FDIC defendants.

Finally, the Calsin and Evelyn settlements do not involve payment of a specific amount to the class, but rather provide only that if the class reinstates its action against Calsin and Evelyn, its recovery will be limited to insurance policy proceeds. I nevertheless find that these settlements are within the range of reasonableness in light of the class's best possible recovery. *See supra*, at 456.

In short, after analysis of the factors identified in *Girsh*, I find that the three proposed settlements are fair, adequate and reasonable. I now will address the objections to the proposed settlements that have been filed.

---

12. The Release and Settlement Agreement provides for distribution of the $50,000,000 of insurance proceeds as follows: at least $9,640,000 to the class; at least $28,800,000 to the FDIC; up to $1,500,000 in an Opt–Out Fund, from which the class receives all interest accrued and all sums not awarded; and approximately $10,000,000 in an Indemnity Fund, from which the FDIC receives 95%, and the class 5%, of interest accrued and all sums not used. Because no requests for exclusion have been filed, the class will receive the $1,500,000 which had been earmarked for the Opt–Out Fund. Since the insurance proceeds were deposited in escrow on August 18, 1988, the portion attributable to the class has accrued approximately $1,500,000 in interest. The total amount that the class will receive from the Blank Rome settlement, $13,200,000, has been reduced by the $75,000 spent providing notice to the class, to yield a net total at this time of approximately $13,125,000. Plaintiffs' Memorandum in Support of Proposed Settlements, at 15–16; Hearing of April 25, 1990, Tr. at 8–9.

13. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir.1974) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved. The proposed settlement cannot be judged without reference to the strength of plaintiffs' claims.")

14. The proportions in which the FDIC and class will share in any recoveries from the other defendants are established in the Confidential Sharing Agreement entered by the FDIC and the class on July 9, 1987. The parties have filed with the Clerk of Court a copy of this Sharing Agreement redacted so as not to disclose the percentages in which the FDIC and class will share in any recoveries from defendants other than the Blank Rome defendants. The publicly filed Sharing Agreement was so redacted because disclosure of this information to the nonsettling defendants might jeopardize future settlement negotiations between the class and the remaining defendants, and thereby prejudice the interests of the class members. No class members have requested to see the unredacted Sharing Agreement. I have reviewed *in camera* the unredacted Sharing Agreement.

### B. *Objection of Guy Damore*

Guy F. Damore has mailed a letter to my chambers which was filed as an objection to the proposed settlements on April 9, 1990.[15] Damore apparently objects to the proportions, established in the Settlement and Joint Prosecution Agreement and Sharing Agreement between the class and the FDIC, in which the class and the FDIC share in the proceeds from the settlement with the Blank Rome defendants. Damore did not appear at the hearing of April 25 to present his objection orally. Hearing of April 25, 1990, Tr. at 5.

Damore's objection was not timely filed, since under the Order of December 29, 1989, any objections to the proposed settlements were to be filed with the Clerk of Court no later than March 12, 1990. More importantly, Damore's objection is without merit. According to Damore, the FDIC should receive a smaller portion of the proceeds from the Blank Rome settlement, and the class, a larger portion, because the FDIC mismanaged Old Sunrise's assets following its insolvency, and sold those assets for too little money. But the division of proceeds from the Blank Rome settlement between the FDIC and the shareholder class was agreed upon with respect to a settlement of the class's claims against the FDIC defendants for their alleged actions relating to Old Sunrise prior to July 18, 1985, the date of Old Sunrise's insolvency. A claim that the FDIC mismanaged Old Sunrise assets it received and disposed of following Old Sunrise's insolvency is immaterial to the division of proceeds agreed to in the Joint Prosecution and Settlement Agreement and the Sharing Agreement between the FDIC and the class. As discussed *supra*, I find the class's share of the proceeds from the Blank Rome settlement pursuant to its settlement with the FDIC defendants to be within the range of

reasonableness. I therefore will deny Damore's objection.

### C. *Objection of Depositor Plaintiffs*

■ George and Anne Popkin, plaintiffs in the Depositors case, have filed an objection asserting several grounds for denying or staying approval of the shareholder class's proposed settlement with the Blank Rome defendants: the proposed settlement uses all of the proceeds of Blank Rome's liability insurance, leaving no insurance funds to cover depositors' claims; counsel for the Popkins was excluded from settlement negotiations directly affecting the depositors' interests; although under the proposed settlement an Indemnity Fund is set up from the insurance proceeds to cover claims like the Popkins', Blank Rome may settle claims with money from the Indemnity Fund only with consent of the FDIC and the shareholder class; and the proposed settlement's provision that none of the Blank Rome defendants may admit liability without consent of the FDIC and the shareholder plaintiffs' counsel will interfere with future discovery by the depositors.

The Memorandum and Order of November 9, 1989 granting summary judgment against the Popkins and dismissing their complaint is currently on appeal before the Court of Appeals for the Third Circuit. Regardless of whether the Court of Appeals reverses my decision and restores the Popkins' action, the Popkins' objection to the proposed Blank Rome settlement is without merit, and will be dismissed for two reasons: the Popkins do not have standing to object to the settlement; and the grounds asserted by the Popkins provide no legal basis for staying or denying approval of the settlement.

---

**15.** Damore states in his letter, dated April 6, 1990:

"I am or was a stockholder in Sunrise Savings & Loan Association. I feel that the amount of *settlement for the defrauded shareholders isn't fair in relationship to all the valuable properties* that Sunrise Savings & Loan had as assets.

I know of properties that where taken over by the [FDIC] which were very valuable, but be-

cause of [FDIC] poor management, no knowing how to operating these properties, the appraisal value depreciated 100 folds.

The [FDIC] because of their inexperience in handling the Assets of Sunrise Savings & Loan, could of received twice as much money from the sales of those Assets and I feel that they, the [FDIC], should take far less of the total settlement and add it to the shareholders."

■ As a general rule, only class members have standing to object to a proposed class settlement. In *Gould v. Alleco, Inc.,* 883 F.2d 281 (4th Cir.1989), *cert. denied* — U.S. ——, 110 S.Ct. 870, 107 L.Ed.2d 953 (1990), for example, the Court of Appeals for the Fourth Circuit held that a corporate bondholder lacked standing to object to a proposed settlement of claims by a class of corporate shareholders against the corporation:

> The plain language of Rule 23(e) clearly contemplates allowing only class members to object to settlement proposals. *Kusner v. First Penn Corp.,* 74 F.R.D. 606, 610 n. 3 (E.D.Pa.1977), *aff'd* 577 F.2d 726 (3d Cir.1978); *Jenson v. Continental Financial Corp.,* 591 F.2d 477, 482 n. 7 (8th Cir.1979). Beginning from the unassailable premise that settlements are to be encouraged, it follows that to routinely allow non-class members to inject their concerns via objection at the settlement stage would tend to frustrate this goal. ... We hold, therefore, that non-class members have no standing to object, pursuant to a Rule 23(e) notice directed to class members, to a proposed class settlement. Interjection of the opposing views of non-class members should proceed via intervention under Rule 24. 883 F.2d at 284.

*See also Kusner,* 74 F.R.D. at 610 (holding that corporate stockholder had no standing to object to settlement by class of holders of convertible debentures in corporation).

In their reply brief, the Popkins cite cases in which courts have heard objections of non-class members to proposed settlements. Each of these cases, however, is readily distinguishable. In *In Re Pittsburgh and Lake Erie Railroad Co. Securities Litigation,* 543 F.2d 1058, 1064–1067 (3d Cir.1976), the Court of Appeals for the Third Circuit held that a pledgee of stock had standing because of its equitable interest in the stock to object to a proposed shareholder class settlement. In contrast, the Popkins do not assert any equitable interest in Old Sunrise stock making them effective shareholder class members, but rather claim merely that the proposed settlement affects their separate action against the Blank Rome defendants.

The other cases the Popkins cited concern the court's obligation to hear objections of intervenors under Fed.R.Civ.P. Rule 24 concerning a proposed settlement. *Calvert Fire Ins. Co. v. Environs Development Corp.,* 601 F.2d 851, 858–859 (5th Cir.1979); *Kirkland v. N.Y. State Dept. of Correctional Services,* 711 F.2d 1117, 1125–1129 (2d Cir.1983), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 997, 79 L.Ed.2d 230 (1984); *Jet Traders Investment Corp. v. Tekair, Ltd.,* 89 F.R.D. 560, 569–570 (D.Del.1981). As the *Gould* Court acknowledged, it may be appropriate for a non-class member to state his or her opposition to a class settlement through intervention pursuant to Rule 24. Although the Popkins have moved to intervene "in this multidistrict litigation" pursuant to Rule 24(a)(2) and (b), I will deny their motion.

■ Intervention of right under Rule 24(a)(2) is permitted only "when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Fed.R.Civ.P. Rule 24(a)(2). The Popkins, however, cannot establish that approval of the Blank Rome settlement will impair or impede their ability to protect any interest they have in this litigation. They argue that the Blank Rome insurance policy proceeds and the Indemnity Fund set up under the Blank Rome settlement are "discrete, distinguishable" funds in which they have an interest which their ability to protect will be impaired or impeded by approval of the Blank Rome settlement. But as discussed more fully *infra,* the Popkins cannot establish that they have any greater entitlement to the insurance policy proceeds or to the Indemnity Fund than they have to the Blank Rome defendants' other assets. It is uncontested that the Blank Rome defendants have other assets available to satisfy any judgment the Popkins may obtain

against them. *Cf. Calvert Fire,* 601 F.2d at 858 (intervention under 24(a)(2) permitted where insurance claim only asset available to satisfy creditors). Any increased difficulty the Popkins may have in recovering from or settling with the Blank Rome defendants because they have to seek satisfaction from the Indemnity Fund or from other assets is not of sufficient magnitude to permit intervention under Rule 24(a)(2). *See Jet Traders,* 89 F.R.D. at 570 ("the mere fact that the first action may decrease the ability of the intervenor to collect a potential judgment against the defendant is insufficient to be considered a substantial impairment of an interest for the purposes of Rule 24(a)(2).")

■ The decision whether to allow permissive intervention under Rule 24(b) "is wholly discretionary with the district court even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied." *Bush v. Viterna,* 740 F.2d 350, 359 (5th Cir.1984). Because I find, as discussed *infra,* that the Popkins' grounds for objecting to the proposed Blank Rome settlement are without merit, I will not exercise my discretion under Rule 24(b) to allow the Popkins to intervene for the purpose of posing their objection.

■ The Popkins also argue that consolidation of the Depositors case with the Securities and Fiduciary Duty cases has conferred upon them standing to object to the Blank Rome settlement. The Judicial Panel on Multidistrict Litigation consolidated the actions in this Court pursuant to 28 U.S.C. § 1407 only for the purposes of "centralized pretrial proceedings." *See In re Sunrise Securities Litigation,* 698 F.Supp. at 1261, 1263. There is nothing in the text of § 1407, and the Popkins cite no case law, suggesting that consolidation under § 1407 confers upon the parties to one consolidated action any substantive rights concerning another consolidated action. Thus, consolidation of the Depositors case with the Securities case has not given the Popkins standing to object to a partial settlement of the Securities case.

■ Even if the Popkins had standing to object to the proposed Blank Rome settlement, I would reject their objection as meritless. The Popkins' fundamental objection to the proposed settlement between the shareholder class and the Blank Rome defendants is that it consumes all of the proceeds of Blank Rome's liability insurance, leaving no insurance funds to cover or settle depositors' claims. Although the Popkins admit that under the settlement an Indemnity Fund worth approximately $10,-000,000 will be set up from which the depositors may recover, they complain that the Fund must be shared with other claimants, and in any event will be inadequate to cover the depositors' claims.[16] They also claim that the Indemnity Fund is structured unfairly because Blank Rome may settle claims with money from the Fund only by consent of the FDIC and the shareholder class.

These arguments are meritless because the Popkins cannot establish that, even if they could prove or settle their claims against the Blank Rome defendants, they would be entitled as a matter of law to recover their damages from the proceeds of Blank Rome's liability insurance. The Popkins have not identified any requirement under either Pennsylvania or Florida law that a law firm carry any malpractice insurance. Nor have the Popkins established that the Blank Rome defendants have insufficient assets other than the proceeds of Blank Rome's liability insurance to satisfy the depositors' claims. *See supra,* at 456. The Popkins merely argue that as a practical matter it will be more difficult for them to recover from or settle with the Blank Rome defendants if the funds available to satisfy their claims are in the Indemnity Fund or in Blank Rome assets other than insurance policy proceeds.

While all claimants may prefer to be able to recover their damages from a defendant's insurance policy proceeds, where, as here, the total damages claimed by all

16. According to the Popkins, the depositors have potential damage claims, including treble dam-

ages, of $20,000,000. Objections by Depositor Plaintiffs, at 8.

plaintiffs exceeds the limits of that defendant's insurance coverage, it is likely that one or more plaintiffs may be forced to seek recovery from other assets of that defendant. Indeed, in the present litigation, even if the $10,000,000 funding for the Indemnity Fund were available exclusively for depositors' claims, there would still be a $10,000,000 shortfall from the depositors' total alleged damages which could be recovered only from the Blank Rome defendants' other assets or from other defendants. Thus, if the depositors did not find themselves forced to recover from assets of the Blank Rome defendants other than insurance proceeds, the FDIC or the shareholder class would; the Popkins have not advanced any reason why the depositors have any greater entitlement than the FDIC or the shareholder class to the Blank Rome defendants' insurance proceeds.

In short, I find that the Indemnity Fund benefits the depositors because it makes available to them insurance policy proceeds to which they can claim no greater entitlement than they can to any other asset of the Blank Rome defendants. Although the Popkins might well prefer access to insurance policy proceeds outside of the Indemnity Fund, they will suffer no significant prejudice from being forced to recover from the Indemnity Fund or from other assets.[17]

Likewise, I find that the depositors will not be prejudiced by the proposed settlement's provision that no Blank Rome defendant may admit liability without consent of the FDIC and shareholder plaintiffs' counsel. Release and Settlement Agreement, § 6.9. This provision does not affect the Blank Rome defendants' obligations to testify truthfully and to comply with discovery requests. Moreover, this provision concerns only settlements made from the Indemnity Fund, and therefore does not affect the Blank Rome defendants' ability to settle or admit liability outside the scheme of the Indemnity Fund.

Because I find that the Popkins do not have standing to object to the proposed Blank Rome settlement, and that their grounds for objecting are without merit, I will deny their objection.

I will approve the three proposed settlements.

### ORDER

AND NOW, this 29th day of May, 1990, upon consideration of the motion for approval of the shareholder class's settlements with Old Sunrise, FDIC as receiver for Old Sunrise, New Sunrise, FDIC as receiver for New Sunrise, the Federal Home Loan Bank Board and FDIC (the "FDIC" defendants); Blank, Rome, Comisky & McCauley, Michael D. Foxman, M. Kalman Gitomer, Kenneth Treadwell and Edward E. Fitzgerald, Jr. (the "Blank Rome" defendants); and Robert Calsin and Sheila Evelyn; of the supporting and opposing memoranda, including the objections of Guy F. Damore and of George and Anne Popkin; of the motion of George and Anne Popkin to intervene pursuant to Fed.R. Civ.P. Rule 24, and of the supporting and opposing memoranda; and after the hearing held on April 25, 1990, it is hereby ORDERED that:

1. The capitalized terms in this Order shall have the meanings set forth in the Release and Settlement Agreement, as modified. For purposes of this Order, the term "Non-Settling Defendant" shall mean any party and any person who may become a party in the Securities or Fiduciary Duty Cases who is not a party to the Release and Settlement Agreement dated July 22, 1988, as modified.

2. With respect to the Securities Case, the prerequisites to a class action, set forth in Fed.R.Civ.P. Rule 23(a), are present, and the Court finds that the questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a

---

**17.** For the same reason, the Popkins' objection to the Blank Rome settlement on the grounds that they were prejudiced by being excluded from the negotiations that produced the settlement is without merit. The Popkins cannot establish that they have any greater entitlement to Blank Rome's insurance proceeds than they have to any other Blank Rome asset, so that they will not be prejudiced by having to pursue recovery from other assets.

class action is superior to other available methods for the fair and efficient adjudication of the controversy. Accordingly, for the purposes of the Settlement, the Securities Case shall be maintained as a class action against the Settling Defendants (excluding Treadwell and Fitzgerald), with the Named Plaintiffs to serve as representatives of the Class, defined as follows:

All persons who acquired the securities of Sunrise Savings and Loan Association between July 1, 1983 and July 18, 1985, except for (a) persons to the extent they bought such securities to cover shore sales, (b) the Firm and the defendants in the Restated Consolidated Amended Complaint, and the spouses, children, legal representatives and heirs of the defendants and the firm, and (c) persons employed by the defendants during the Class Period.

3. The notice given of the proposed settlements and of the hearing held on April 25, 1990 was the best practical notice under the circumstances and provided any Class Member desiring to object to the settlements with fair and adequate notice of the hearing and of the terms of the proposed settlements.

4. For the purpose of satisfying Rule 23, the terms of the settlement with the Blank Rome defendants are adjudged to be fair, reasonable and adequate and to have been entered into in good faith. The Release and Settlement Agreement, as modified, hereby is APPROVED, and the parties thereto are directed to implement the settlement in accordance with its terms; *provided, however*, that approval of the Release and Settlement Agreement, as modified, shall not bind any Non–Settling Defendant to any of its provisions.

5. The Stipulation and Proposed Order of Dismissal between FDIC and the Settling Defendants hereby is APPROVED, and accordingly any and all claims included in the Restated Second Consolidated Amended Complaint against Old Sunrise, FDIC as Receiver for Old Sunrise, New Sunrise, the Federal Home Loan Bank Board, FDIC as Receiver for New Sunrise, and FDIC, and each of their successors and assigns, including but not limited to the Office of Thrift Supervision and the Resolution Trust Corporation are DISMISSED with prejudice.

6. The Stipulations of Dismissal Without Prejudice between Robert Calsin and Sheila Evelyn, respectively, and the Class hereby are APPROVED, and the Restated Second Consolidated Amended Complaint in the Securities Case is DISMISSED without prejudice as against Robert Calsin and Sheila Evelyn pursuant to the terms of said Stipulations.

7. For the purpose of satisfying Rule 23, the terms of the settlement between the class Plaintiffs and all Class Members and FDIC are adjudged to be fair, reasonable and adequate and to have been entered into in good faith and hereby are APPROVED.

8. The Restated Second Consolidated Amended Complaint in the Securities Case is DISMISSED with prejudice as against Blank, Rome, Michael D. Foxman and M. Kalman Gitomer; *provided, however*, that the claims by persons eligible to be Class Members, who have timely submitted Requests for Exclusion, are not dismissed.

9. Class Plaintiffs and all Class Members who did not submit timely Requests for Exclusion, and FDIC, are permanently enjoined from further prosecution of the Settled Claims against Blank Rome, Michael D. Foxman, M. Kalman Gitomer or the Firm.

10. All claims for contribution that have been asserted by any person against the Firm or any Individual Settling Defendant in or arising out of the Fiduciary Duty or Securities Cases are DISMISSED with prejudice, and all claims for contribution that have been asserted by Blank, Rome or any Individual Settling Defendant against any Non–Settling defendant in or arising out of the Fiduciary Duty or Securities Cases are DISMISSED with prejudice.

11. (a) All persons are permanently barred and enjoined from filing or prosecuting any claim for contribution against the Firm or any Individual Settling Defendant to recover damages on account of any liability of such persons to Class Members

or to FDIC arising out of the claims asserted or that could have been asserted in the Fiduciary Duty or Securities Cases, except if any former Blank, Rome partner or employee files or prosecutes any claim against any Non–Settling Defendant in or arising out of the Fiduciary duty or Securities Cases, such Non–Settling Defendant will not be barred or enjoined from filing or prosecuting any claim for contribution in such cases against such former Blank Rome partner or employee.

(b) Blank, Rome and each Individual Settling Defendant is permanently barred and enjoined from filing or prosecuting any claim for contribution against any Non–Settling Defendant on account of any liability of Blank, Rome or such Individual Settling defendant to Class Members or to FDIC arising out of the claims asserted or that could have been asserted in the Fiduciary Duty or Securities Cases.

(c) Notwithstanding the foregoing, any claim for contribution asserted or that could have been asserted against the Firm, any Individual Settling Defendant or any Non–Settling Defendant to recover damages arising from any liability determined in any action brought by any person who properly excludes himself from the Class is not barred.

12. Notwithstanding the dismissal of the settling Defendants, if FDIC or the Class secures a verdict against any Non–Settling Defendant in the Fiduciary Duty or Securities Cases, the damages recoverable from such Non–Settling Defendant shall be reduced by no less than the proportional share of the damages attributable to the Settling Defendants, as may be determined by the Court or trier of fact at trial; *provided, however,* there shall be no reduction of damages recoverable from any Non–Settling Defendant with respect to any claims for which there was no right to contribution.

13. Notwithstanding dismissal or barring of contribution claims against the Settling Defendants, the Fiduciary Duty and Securities Cases shall proceed, except as provided in paragraph 14 below, as if the Settling Defendants had remained, in all regards, parties to contribution claims. Nothing contained in this paragraph shall be construed to permit the entry of judgment against any Settling Defendant or the Firm on any contribution claim.

14. Nothing contained in paragraph 13 shall be construed to affect the rights of a Settling Defendant to participate at trial with respect to any claims which are not dismissed. In the event all claims against a settling defendant are dismissed, such Settling Defendant may not participate at trial as a party and discovery against such a Settling Defendant by any Non–Settling Defendant may proceed as if the Settling Defendant remained a party to contribution claims, except

(a) Such Settling Defendant shall not be subject to the service of interrogatories or requests for admissions;

(b) Kenneth A. Treadwelll will not be required to appear for deposition without service of subpoena, if all claims against him are dismissed; and

(c) Such Settling Defendant shall be entitled to reimbursement of reasonable expenses for travel, lodging and food with respect to any deposition of that Settling Defendant to be taken more than 100 miles from the place where he resides, or in the cases of Blank, Rome, to be taken outside the Eastern District of Pennsylvania, from the party or parties noticing such deposition.

15. The parties are to bear their own costs, except as set forth in the Release and Settlement Agreement.

16. The Clerk of the Court is directed to enter this Order as a final judgment under Fed.R.Civ.P. Rule 54(b), the Court determining and finding that there is no just reason for delay and that such judgment should be made final.

17. The Court will retain jurisdiction over all matters relating to the consummation and implementation of the settlements and over all matters relating to the enforcement of this Order and the settlements.

18. The motion of George and Anne Popkin to intervene pursuant to Fed.R. Civ.P. Rule 24 is DENIED.